UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MICHAEL S. BECKER and LORRAINE BECKER, | ) ) ) |
| *Plaintiffs*, | ) Case No. 1:20-cv-281 ) ) Judges Varlan/Steger |
| v. | ) ) |
| FORD MOTOR COMPANY and PHILLIP BECKER, | ) ) ) |
| *Defendants*. | ) ) ) |

**REPORT AND RECOMMENDATION**

**I.   Introduction**

This matter is before the Court upon Plaintiffs' Motion to Remand to the Circuit Court for Hamilton County, Tennessee [Doc. 11]. When this case was initially filed several years ago, Defendant Ford Motor Company ("Ford") removed Plaintiffs Michael and Lorraine Becker's ("the Beckers") lawsuit to federal court, and United States Magistrate Judge Susan K. Lee remanded the case to state court for lack of subject-matter jurisdiction. After years of litigation in state court, Ford has again removed the case to federal court, citing a change in circumstances. As before, the Beckers are seeking remand to state court.[1]

United States District Judge Thomas A. Varlan referred Plaintiffs' motion for remand [Doc. 11] to the undersigned for a report and recommendation under 28 U.S.C. § 636(b). [Doc. 15]. For reasons that follow, the undersigned **RECOMMENDS** that Plaintiffs' Motion to Remand to State

---

[1] Both sides are intent on heeding the advice of General George S. Patton, "Never let the enemy pick the battle site." Plaintiffs want to fight the battle in state court; Defendant in federal court.

Court [Doc. 11] be **GRANTED**, and that this Court **REMAND** this case to the Circuit Court of Hamilton County, Tennessee.

## II.     Factual Summary

By way of background, Michael and Lorraine Becker owned a 2005 Ford F-150. In July 2012, Michael's son Phillip drove the truck with Michael in the passenger's seat when the truck veered off the road and struck a utility pole. Phillip was not injured, but Michael suffered serious injuries. In 2013, Michael and Lorraine Becker filed a lawsuit in state court against Ford Motor Company, claiming that a design and manufacturing defect in the truck's restraint and steering systems caused Michael's injuries. [*Becker v. Ford Motor Co.*, 1:13-cv-276, Doc. 1]. They did not name their son Phillip as a defendant in that lawsuit. [*Id.*].

Because the Plaintiffs are residents of Tennessee and the sole defendant, Ford Motor Company is not, Ford removed this case to federal court based upon diversity jurisdiction. [*Id.*]. Ford answered the complaint, asserting the defense that Phillip Becker's negligence—not a defect in the Ford F-150—was the sole proximate cause of Michael's injuries. The Beckers then filed a motion to join Phillip Becker as a defendant [*Id.* at Doc. 10] and a motion to amend their complaint to include allegations against Phillip [*Id.* at Doc. 11].

The one-year statute of limitations had already run at that point; however, the Beckers relied upon Tenn. Code Ann. 20-1-119 as a basis to amend their complaint to include Phillip. This statute provides in relevant part:

> In civil actions where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations, or named in an amended complaint filed within the applicable statute of limitations, alleges in an answer or amended answer to the original or amended complaint that a person not a party to the suit caused or contributed to the injury or damage for which the plaintiff seeks recovery, and if the plaintiff's cause or causes of action against that person would be barred by any applicable statute of limitations but for the operation of this section, the plaintiff may, within (90) ninety days of

the filing of the first answer or first amended answer alleging that person's fault, ... [a]mend the complaint to add the person as a defendant. . . .

Consequently, at issue was whether the Tennessee statute permitted the Beckers to "make use of the 90-day exception to the statute of limitations in order to amend their complaint to add their son [Phillip,] since he was 'known' to Plaintiffs when they filed their complaint." [*Id.* at Doc. 20, PageID #: 85]. On a report and recommendation, Judge Lee recommended that the Beckers' motions to add Phillip be denied; however, she recommended that, if the district judge decided to certify the statute of limitations exception to the Tennessee Supreme Court, then the district judge should provisionally grant the Beckers' motions to add Phillip as a defendant. [*Id.* at Doc. 20, PageID #: 89]. While Judge Lee's report and recommendation was pending before the district judge, the parties consented to Judge Lee to be their trial judge under 28 U.S.C. § 636 and *Federal Rule of Civil Procedure* 73(a). [*Id.* at Docs. 25, 26]. Judge Lee then certified the statute of limitations exception issue to the Tennessee Supreme Court and provisionally granted the Beckers' motions to join Phillip as a defendant and to amend the complaint. [*Id.* at Doc. 27].

In March 2014, the Tennessee Supreme Court answered the certified question in favor of the Beckers, "holding 'a plaintiff may rely on the ninety-day savings provision in Tenn. Code Ann. § 20-1-119 in order to add a previously known potential non-party tortfeasor to an existing lawsuit even when the plaintiff knew the identity of the potential tortfeasor at the time of the filing of the plaintiff's original complaint but chose not to sue the potential tortfeasor.'" [*Id.* at Doc. 44 at PageID #: 218-19 (citing *Becker v. Ford Motor Co.*, 431 S.W.3d 588 (Tenn. 2014))].

Dissatisfied with that result, Ford filed a motion to reconsider Judge Lee's provisional grant permitting the Beckers to add Phillip Becker as a co-defendant. [*Id.* at Docs. 38, 39]. Under 28 U.S.C. § 1447(e), Ford maintained that the Beckers added their son, Phillip, as a co-defendant

solely to circumvent federal diversity jurisdiction. Judge Lee denied Ford's motion for reconsideration, in 2014, finding that:

> Defendant concentrates its arguments on a claim that Plaintiffs are attempting to add Son [Phillip] as a nondiverse co-defendant in this matter for the primary purpose of ousting the case from the federal forum. Contrary to Defendant's arguments, it appears Plaintiffs have added Son only because Defendant alleged his comparative fault as an affirmative defense. True, failure to name Son in an affirmative defense would have barred Defendant from attempting to shift blame to Son at trial. *See Free v. Carnesale*, 110 F.3d 1227, 1230 (6th Cir. 1997). Once the strategic decision was made by Defendant to name Son as a tortfeasor, however, Plaintiffs could properly join Son as a defendant.
>
> There has been no showing that the purpose of adding claims against Son in the amended complaint was in any way designed to defeat federal jurisdiction. While Defendant cites to cases where a plaintiff attempted to add a nondiverse party after removal . . . none of the cited cases involved a situation where a defendant itself named the proposed nondiverse party as a comparative tortfeasor under Tennessee state law. Despite Defendant's protestations to the contrary, it does not appear to the Court that Plaintiffs are adding Son to defeat federal jurisdiction; it appears they are adding Son to avoid any attempt by Defendant to shift fault to an "empty chair" under Tennessee's comparative fault scheme.

[*Id.* at Doc. 44, PageID: 221]. Judge Lee concluded by remanding the case to state court. [*Id.* at PageID #: 222].

After four years of litigation in state court, the Beckers took a non-suit against Ford and Phillip Becker in 2018 and then filed a second lawsuit in state court against these same defendants in 2019. In this second lawsuit, the Beckers alleged strict products liability, negligence, breach of warranty, and loss of consortium against Ford. Against Phillip Becker, they alleged counts of negligence and loss of consortium.

This second lawsuit proceeded in state court to the stage wherein the parties were required to prepare and file a final Joint Pre-trial Order in advance of trial. Following the preparation of the Joint Pretrial Order in state court, Ford raised the argument that Plaintiffs' claims against Phillip

Becker were a sham asserted solely to defeat federal diversity jurisdiction. In support of this argument, Ford asserts the following:

- When Plaintiffs submitted their version of a proposed Joint Pretrial Order on August 28, 2020, the order omitted any claim against Phillip Becker [1:20-cv-281, Doc. 1-11].

- In response to Ford's proposed jury instructions, Plaintiffs filed an objection stating: "Plaintiffs are not pursuing a claim for negligence against Phillip Becker as amended/supplanted by Plaintiffs' Pre-Trial Order. Plaintiffs' do not have the burden to prove Phillip Becker was negligent" and "Plaintiffs object to this instruction to the extent that allegations of fault against Michael Becker and/or Phillip Becker are unsupported by any evidence in the record" [*Id.* at Doc. 1-12].

- Plaintiffs submitted a proposed verdict form on September 14, 2020, which did not give the jury the option of attributing negligence to, and awarding damages against Phillip Becker [*Id.* at Doc. 1-13].

- In the final, executed Joint Pretrial Order, Plaintiffs extinguished their claims against Phillip and took the position that the Joint Pretrial Order supplanted their earlier pleadings. [Doc. 1-10].

- During discovery, the Beckers "intentionally took no action to pursue a claim against [Phillip Becker] . . . [their] own accident reconstruction expert acknowledged that his assignment did not include determining . . . ." Phillip Becker's role in the crash. [Doc. 14 at PageID #: 917-18].

- The Beckers "did not name any expert to opine on [Phillip] Becker's negligence and causation." [*Id.* at PageID #: 918].

- Phillip Becker never entered an appearance and never obtained counsel, yet the Beckers never moved for a default judgment against him. [*Id.*].

- During the deposition of Phillip Becker that was scheduled by Ford, the Beckers' attorney asked Phillip "'softball' questions, each of which was designed to exonerate [Phillip] Becker." [*Id.*].

- The Beckers opposed Ford's motion for partial summary judgment in which Ford attempted to attribute fault for the accident to Phillip Becker, and the Beckers' defended Phillip's actions. [*Id.*].

For the reasons cited above, Ford removed the state court case to federal court, arguing that Plaintiffs abandoned their claims against Phillip Becker on the eve of trial and that Plaintiffs never

5
Case 1:20-cv-00281-TAV-CHS   Document 28   Filed 07/28/21   Page 5 of 15   PageID #: 1067

really possessed any intention of prosecuting claims against Phillip Becker. The Beckers responded with the present Motion to Remand [Doc. 11]. The Beckers rely upon Judge Lee's 2014 opinion in arguing that Phillip was not added to defeat diversity jurisdiction. Instead, he was added to prevent Ford from employing the "empty chair" defense at trial.

United States District Judge Thomas A. Varlan referred Plaintiffs' request for remand to the undersigned for a report and recommendation under 28 U.S.C. § 636(b). [Doc. 15]. The undersigned conducted a hearing on Plaintiffs' Motion to Remand [Doc. 11] on April 30, 2021, and requested supplemental briefing from the parties.

In the Beckers' supplemental brief, they relied upon Judge Lee's 2014 decision in the initial proceeding as well as the Tennessee Supreme Court's decision in *Mann v. Alpha Tau Omega Fraternity*, 380 S.W.3d 42 (Tenn. 2012). [Doc. 26]. The Beckers note that Tennessee's limitations statute:

> '[I]s to afford plaintiffs a reasonable opportunity to bring into the lawsuit those persons to whom a timely sued defendant has attributed fault.' This is precisely what happened in this case, given that Defendant Ford expressly blamed Phillip Becker, and still does to this very day, and Plaintiffs brought Phillip Becker into the lawsuit.

[*Id.* (quoting *Mann*, 380 S.W.3d at 50)]. Since Ford asserted in its answer that Phillip Becker was at fault for the vehicle accident, the Beckers had a right to bring him into the lawsuit. The Beckers noted that Phillip Becker

> . . . remained part and parcel of this case for longer than a year. The fact that Plaintiffs, more than a year thereafter, elected to tell the trial judge that they were not going to focus upon Phillip Becker at trial does not, in turn, retroactively demonstrate that Phillip Becker should never have been joined by Plaintiffs to this case . . . .

[*Id.* at PageID #: 1039-40].

In its supplemental brief, Ford argued that a plaintiff's naming of a defendant in a complaint without actually prosecuting a claim against that defendant violates the United States Constitution and Fed. R. Civ. P. 8. [Doc. 27 at PageID #: 1052-57]. In summary, Ford asserts that even though the Beckers had a right under Tenn. Code Ann. § 20-1-119 to add Phillip Becker as a defendant, their failure to actively prosecute a claim against him through the trial proves that he was brought into the case only to defeat diversity jurisdiction. For this reason, Ford argues that the case should remain in federal court.

### III. Analysis

#### A. Standard under 28 § 1446(c)(1)

A civil case brought in state court may be removed to federal court if the case could have been brought there originally. 28 U.S.C. § 1441(a); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). A federal court has original "diversity" jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); *Rogers*, 239 F.3d at 871. When removal occurs, courts must determine whether complete diversity exists at the time of removal. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). "Diversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *Id.* (quoting *SHR Ltd. Partnership v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989)).

Ordinarily, a case may be removed to federal court within thirty days of the defendant's receipt of a pleading from which the defendant can ascertain that the case is removable to federal court by diversity of citizenship or federal question jurisdiction. *See* 28 U.S.C. 1446(b)(3). However, in 2012, Congress amended 28 U.S.C. § 1446 to add a "bad-faith exception" to the removal statute, which provides that removal upon diversity jurisdiction may not be sought more

than one year after a case commences unless the court finds that the plaintiff acted in bad faith to prevent removal. 28 U.S.C. § 1446(c)(1).[2]

The Sixth Circuit has not clearly defined what constitutes "bad faith" under this statute. But other district courts within the circuit have held that bad faith need not amount to malicious or unsavory conduct. Instead, bad faith turns on whether the plaintiff engaged in intentional conduct to deny the defendant the chance to remove the case to federal court. *See Hiser v. Seay*, No. 5:14-CV-170, 2014 WL 6885433, at *4 (W.D. Ky. Dec. 5, 2014); *Taylor v. King*, No. 5:12–CV–1, 2012 WL 3257528 at *4 (W.D. Ky. Aug. 8, 2012).

The burden of establishing jurisdiction falls on the removing party. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2000). And, due to federalism concerns implicated by removal, "all disputed questions of fact or ambiguities in the controlling . . . state law" must be resolved "in favor of the non-removing party." *Coyne*, 183 F.3d at 493 (alteration in original) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).

Ford urges the Court to apply a different standard outlined in a non-binding district court case from New Mexico, *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225 (D.N.M. 2014). That standard evaluates § 1446(c) "bad faith" through the following steps:

> First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler,

---

[2] **(c) Requirements; Removal Based on Diversity of Citizenship.-**
(1) A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

28 U.S.C. § 1446(c)(1).

> the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.

*Id.* at 1262-63. The undersigned notes that the Sixth Circuit and other district courts within this circuit have not adopted the *Aguayo* standard cited by Ford. *See Larue v. Volkswagen Grp. of Am., Inc.*, No. 1:17-CV-00001-GNS, 2017 WL 2312480, at *6 (W.D. Ky. May 26, 2017) (rejecting *Aguayo* standard); *Dutchmaid Logistics, Inc.*, 2017 WL 1324610, at *3 ("As Plaintiffs point out, the Sixth Court has ruled on cases regarding the bad faith exception after *Aguayo* was decided, and has not relied on this test. As a result, the Court finds it inappropriate to adopt the test now."). The standard outlined in *Aguayo* represents one judge's view as to what should be considered in determining the existence of bad faith in connection with removal proceedings; however, there is no indication that it is a standard that has gained favor with a majority of courts.

### B. "Bad faith" has not been established

The Beckers seek to remand this case to state court because their son, Phillip Becker, has been (and continues to be) a non-diverse defendant, and removal cannot be sought by Ford more than one year after the case was commenced unless Ford can establish that the Plaintiffs acted in bad faith to add Phillip as a defendant solely to prevent removal. Ford points to the Beckers' recent abandonment of their claims against Phillip as proof that they never actually intended to pursue liability against him and that they added him as a defendant in a bad faith effort to defeat diversity jurisdiction.

Returning to the starting point for the analysis of the "bad faith" issue, Phillip Becker was originally brought in as a defendant pursuant to Tennessee Code Annotated § 20-1-119, which provides in relevant part:

**20-1-119. Comparative fault Joinder of third party defendants.**

**(a)** In civil actions where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations, or named in an amended complaint filed within the applicable statute of limitations, alleges in an answer or amended answer to the original or amended complaint that a person not a party to the suit caused or contributed to the injury or damage for which the plaintiff seeks recovery, and if the plaintiff's cause or causes of action against that person would be barred by any applicable statute of limitations but for the operation of this section, the plaintiff may, within ninety (90) days of the filing of the first answer or first amended answer alleging that person's fault . . . .

When the lawsuit was originally filed, the Beckers did not name their son, Phillip, as a defendant. Instead, they sued only Ford; however, when Ford raised as an affirmative defense that Phillip was responsible for causing the vehicle accident, the Beckers utilized Tenn. Code Ann. § 20-1-119 to add Phillip as a defendant to deprive Ford of the "empty chair defense."

This was a strategy that the Beckers had every right to employ. According to the Tennessee Supreme Court in *Browder v. Morris*, 975 S.W. 2d 308, 312 (Tenn. 1998):

It must be remembered that Tenn. Code Ann. § 20–1–119 was enacted in response to this Court's adoption of comparative fault, and that the concepts of fairness and efficiency form the basis of such a system. See *Owens v. Truckstops of America*, 915 S.W.2d 420, 424 (Tenn.1996). It is neither fair nor efficient in a comparative fault scheme to permit a defendant to identify a financially or legally responsible nonparty after the statute of limitations has run against that nonparty, yet deny the plaintiff an opportunity to join them as a defendant.

*Id.* For the Beckers' part, they did not have to genuinely believe that Phillip caused the accident for them to add him as a defendant. The Tennessee General Assembly gave them a right to add him as a defendant to thwart Ford's possible empty-chair defense. Under those circumstances, it was specious for Ford to argue that the Beckers added Phillip as a defendant to defeat diversity jurisdiction, and Magistrate Judge Lee properly remanded the case to state court.

Ford's counsel does not take issue with the original remand to state court. They argue that, after the passage of seven additional years of litigation in state court, the Beckers' abandonment of

their claims against Phillip on the eve of trial demonstrates that he was included as a defendant only to avoid federal diversity jurisdiction and that this decision reflects bad faith from the outset. As further evidence of bad faith, Ford points out that the Beckers did not actively seek to pursue liability against Phillip through pre-trial discovery and motion practice.

As discussed above, the Sixth Circuit has not adopted the *Aguayo* standard for bad faith. Under such a standard, Ford might have an argument that the Beckers' failure to actively prosecute their claim against Phillip reflects bad faith reason for adding him as a defendant. Without applying the *Aguayo* standard, the undersigned is unable to conclude that the Beckers sued Phillip and kept him in the case solely to avoid federal diversity jurisdiction. Rather, the Court concludes that other legitimate trial stratagems may have driven the Beckers' decision.

During the past seven years of litigation in state court (including one non-suit and a refiling of the lawsuit), it is entirely plausible that the Beckers kept Phillip in the case to guard against the possibility that Ford would effectively shift blame to Phillip and the case might be tried without Phillip being present in the courtroom to defend himself. In other words, their strategy may have been simply to avoid the empty chair. Alternatively, the Beckers may have decided to keep Phillip in the lawsuit while Ford was attempting to establish, through discovery and expert witnesses, that Phillip was solely responsible for the accident. This would preserve for the Beckers the option of shifting their focus toward Phillip if the evidence adduced by Ford pointed in that direction.

Under either of these scenarios, the Beckers were not be obligated to actively pursue a case against Phillip through discovery and motion practice. They could let Ford carry the laboring oar in discovery and then weigh the likelihood that an objective fact-finder would impose liability on Phillip instead of, or in addition to, Ford. Both of these approaches represent reasonable stratagems that a trial lawyer might employ in preparing a case for trial.

For the Beckers to abandon their claims against Phillip on the eve of trial in state court could, as Ford suggests, mean that the Beckers brought Phillip into the case solely to defeat federal diversity jurisdiction. It is, however, equally plausible that the Beckers brought Phillip into the case to avoid the empty-chair defense, or as a hedge against the possibility that Ford could establish that Phillip was responsible for the accident. If on the eve of trial, the Beckers' concluded that Ford's efforts to blame Phillip had been unavailing, it would be a reasonable strategic decision on their part to abandon their own claims against him.

Frankly, one possibility is as plausible as the next, but, as indicated above, the burden of establishing federal jurisdiction falls on the removing party. The statute relied upon by Ford, 28 U.S.C. § 1446(c)(1), provides that removal for diversity jurisdiction may not be sought more than one year after a case commences unless the court finds that the plaintiff acted in bad faith to prevent removal. Thus, it is Ford's burden to establish that the Beckers acted in bad faith to thwart removal. But Ford has not identified any specific, intentional action or inaction by the Beckers to thwart removal.

By way of contrast, in two cases, *Comer v. Schmitt*,[3] and *Hiser v. Seay*,[4] courts within this circuit found bad-faith based upon intentional conduct by the plaintiff. In *Comer*, the court found that the plaintiffs engaged in "intentional inaction that prevented" timely removal through a "methodical delay in consummating the settlement agreement." 2015 WL 5954589, at *4. In *Hiser*, the court found bad faith when the plaintiff admitted in their briefing "that they delayed accepting the [settlement] offers in order to retain the non-diverse parties to 'continue the litigation with all parties in the case until the one-year period passed' due to the 'likelihood of attempted removal'

---

[3] No. 2:15-CV-2599, 2015 WL 5954589, at *1 (S.D. Ohio Oct. 14, 2015), *report and recommendation adopted*, No. 2:15-CV-2599, 2015 WL 7076634 (S.D. Ohio Nov. 13, 2015).
[4] No. 5:14-CV-170, 2014 WL 6885433, at *1 (W.D. Ky. Dec. 5, 2014).

and a desire to keep the case in state court." 2014 WL 6885433, at *4. Ford has not presented similar evidence that would suggest that the Beckers' strategy in keeping Phillip in the case was a bad-faith effort to prevent removal to federal court.

Rather, the pending case is more akin to *Larue v. Volkswagen Group of America, Inc.*, No. 1:17-CV-00001-GNS, 2017 WL 2312480, at *5 (W.D. Ky. May 26, 2017), in which Volkswagen removed a case to federal court following the one-year anniversary of the case's commencement. *Id.* at *2. When the *Larue* plaintiff sought remand, Volkswagen opposed, arguing that the *Larue* plaintiff acted in bad faith by naming non-diverse defendants to preclude timely removal. *Id.* Volkswagen pointed to "Larue's failure to develop discovery in support of his claims against [the] [non-diverse] [d]efendants and argue[d] that Larue failed to fulfill a continuing obligation to develop and reevaluate his claims." *Id.* In remanding the case to state court, the district court found that there was a key strategic reason for naming the non-diverse defendants: state law permitted the jury to apportion fault amongst the party defendants, so plaintiff's failure to name the non-diverse defendants "could have subjected [plaintiff] to the 'empty chair defendant' conundrum had they not been sued . . . ." *Id.* at *4.

Similarly, in *Dutchmaid Logistics, Inc. v. Navistar, Inc.*, No. 2:16-CV-857, 2017 WL 1324610, at *1 (S.D. Ohio Apr. 11, 2017), *report and recommendation adopted*, No. 2:16-CV-857, 2017 WL 3085863 (S.D. Ohio July 18, 2017), the Southern District of Ohio determined that the actions and inactions that the defendant claimed constituted bad faith were "litigation strategy decisions." 2017 WL 1324610, at *3. Those decisions included naming a single non-diverse defendant when there were similarly-situated non-diverse defendants who were not named, never moving to compel production of late discovery, and never deposing employees of the non-diverse defendants. *Id.* The court concluded that "a decision to litigate against certain dealers but not

13
Case 1:20-cv-00281-TAV-CHS   Document 28   Filed 07/28/21   Page 13 of 15
PageID #: 1075

others, as well as a decision to pursue extrajudicial methods to resolve discovery disputes do not constitute action or inaction within the requisite meaning of bad faith." *Id.*

Ford has not met its burden of demonstrating that the Beckers added Phillip as a defendant or that they kept him in the case as a bad faith attempt to avoid removal. A variety of strategic concerns could have motivated the Beckers' decision-making, and this Court is not in a position to divine their motives. The undersigned is reminded of arguably the most famous lawyer, Abraham Lincoln, who, in discussing a particular case likened it to the story of a boy who, when asked how many legs his calf would have if he called its tail a leg, replied, "well, it would have five." To which the prompt response was made, "the calf would still only have four legs—calling its tail a leg does not make it so." And, here, simply characterizing the Beckers' litigation strategy as a bad-faith effort to avoid removal does not make it so. Ford must show more. Consequently, the undersigned will recommend that this case be remanded to state court.

### C. Request for Attorney fees and Costs

In addition to remand, the Beckers request an award of attorney fees due to improper removal pursuant to 28 U.S.C. § 1447(c). As the Supreme Court has recognized, however, an award of attorney fees under that subsection is discretionary, and there is no presumption that such award should be made. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136-37 (2005). The Supreme Court has instructed trial courts to consider "the reasonableness of the removal" and to only award attorney fees "where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

While the undersigned ultimately recommends that removal was improper, the Court does not question the good faith of Ford in removing this action. While the Beckers maintain that the removal delayed the litigation and increased litigation costs, it does not appear to the Court that

those were the motives for the removal of the action to this forum. Likewise, it does not appear that Defendant's arguments were sufficiently weak to award attorney fees and costs in this case. *See Johnson v. Dollar Tree Stores, Inc.*, No. 3:15-CV-706-DJH, 2016 WL 126875, at *3 (W.D. Ky. Jan. 11, 2016); *Cua v. Pilot Travel Ctrs.*, LLC, No. 11-76-C, 2011 WL 1832152, at *2 (W.D. Ky. May 12, 2011). Accordingly, the undersigned will recommend that Plaintiff's request for attorney fees and costs be denied.

## IV. Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that the Beckers' Motion to Remand [Doc. 11] be **GRANTED** and that this matter be **REMANDED** to the Circuit Court of Hamilton County, Tennessee. The undersigned also **RECOMMENDS** that the Beckers' request for attorney fees and costs be **DENIED** and each side bear its/their own costs associated with Ford's removal [Doc. 1].

**ENTER.** [5]

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to Rule 72(b)'s requirements. Failure to file objections within the time specified constitutes a waiver of the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370 (6th Cir. 1987).