UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MICHAEL S. BECKER and <br> LORRAINE BECKER, <br> <br> Plaintiffs, <br> <br> v. <br> <br> FORD MOTOR COMPANY and <br> PHILLIP BECKER, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No.: 1:20-CV-281-TAV-CHS <br> ) <br> ) <br> ) <br> ) <br> ) |

# MEMORANDUM OPINION

This civil matter is before the Court on the Report and Recommendation ("R&R") entered by United States Magistrate Judge Christopher H. Steger on July 28, 2021 [Doc. 28]. In the R&R, Magistrate Judge Steger recommends granting plaintiffs' motion to remand and denying plaintiffs' request for attorneys' fees and costs [Doc. 11]. Defendant Ford Motor Company ("defendant") filed objections to the R&R [Doc. 29], and plaintiffs filed a response [Doc. 30]. Defendant did not reply to plaintiffs' response, and the time for a reply has passed. *See* E.D. Tenn. L.R. 7.1(a), (c).

For the reasons set forth below, defendant's objections are overruled, and the Court will **ACCEPT IN WHOLE** the R&R [Doc. 28]. Plaintiffs' motion to remand [Doc. 11] is **GRANTED**. However, plaintiffs' request for attorneys' fees and costs is **DENIED**.

## I. Factual Background

The Court finds the "Factual Summary" contained in the R&R adequately details the relevant factual background in this case, and the parties have not objected to it. Consequently, the Court hereby adopts and incorporates the "Factual Summary" in the R&R [Doc. 28].

## II. Standard of Review

The district court must conduct a *de novo* review of those portions of a magistrate judge's report and recommendation to which a party objects unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); *Smith v. Detroit Fed'n of Tchrs., Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have 'the duty to pinpoint those portions of the magistrate's report that the district court must specially consider.'" *Mira*, 806 F.2d at 637 (citation omitted). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1).

## III. Applicable Law

A defendant may remove to a federal district court a civil action over "which the district court[ has] original jurisdiction." 28 U.S.C. § 1441(a). Federal courts have limited original jurisdiction and may only exercise the "power authorized by Constitution and statute." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 255 (6th Cir. 2011) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Pertinently, a federal district court has original jurisdiction over actions based on

diversity of citizenship, that is, where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" parties who are "citizens of different States." 28 U.S.C. § 1332; *see also* U.S. Const. art. III, § 2, cl. 1.

While cases relying on diversity of citizenship jurisdiction are generally removable, a defendant may not remove a diversity case if the defendant files its notice of removal more than one year after the case was filed in state court. 28 U.S.C. § 1446(c)(1). There is no dispute defendant here filed its notice of removal after the expiration of this one-year limit. There is an exception to the general one-year bar, however. Namely, a defendant can remove a diversity case beyond the one-year limitation if the "plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.*

Here, there is no dispute that, as between plaintiffs and defendant, diversity of citizenship exists. Instead, the issue arises with respect to defendant Phillip Becker ("Phillip"). Defendant alleges that plaintiffs have named Phillip as a defendant in bad faith, that is, solely to defeat the Court's diversity jurisdiction and thus render the case nonremovable (as Phillip, like plaintiffs, is a citizen of Tennessee) [*See generally* Doc. 29].

The Sixth Circuit has not defined bad faith within the meaning of § 1446(c)(1), and the Sixth Circuit district courts have taken various approaches. Primarily, though, these courts hold that a plaintiff acts in bad faith when "the plaintiff engage[s] in *intentional conduct* to deny the defendant the chance to remove the case . . . ." *Mathes v.*

3

*Burns*, No. 3:19-CV-751, 2019 WL 5394310, at *3 (M.D. Tenn. Oct. 22, 2019) (quoting *Dutchmaid Logistics, Inc. v. Navistar, Inc.*, No. 2:16-CV-857, 2017 WL 1324610, at *2 (S.D. Ohio Apr. 11, 2017) (emphasis added)); *see also Jones v. Wal-Mart Stores E., Inc.*, No. 2:20-CV-02889-TLP-ATC, 2021 WL 674014, at *1–2 (W.D. Tenn. Feb, 22, 2021); *Keller Logistics Grp., Inc. v. Navistar, Inc.*, 391 F. Supp. 3d 774, 777 (N.D. Ohio 2019); *Good Nutrition, LLC v. Kinsale Ins. Co.*, No. 1:17-CV-2160, 2018 WL 7858719, at *5 (N.D. Ohio Jan. 22, 2018); *Larue v. Volkswagen Grp. of Am., Inc.*, No. 1:17-CV-1-GNS, 2017 WL 2312480, at *2 (W.D. Ky. May 26, 2017). Under this standard, the defendant must show the plaintiff took "action or inaction" specifically to keep the nondiverse defendant in the case to prevent removal. *Williams v. 3M Co.*, No. 7:18-CV-63-KKC, 2018 WL 3084710, at *2–4 (E.D. Ky. June 22, 2018) (citation omitted).[1] Defendant carries the "high burden" of demonstrating plaintiffs' bad faith. *Id.*[2]

## IV. Analysis

Defendant raises six objections to the R&R. The first five objections relate to the magistrate judge's finding that defendant did not provide sufficient evidence to demonstrate plaintiffs' bad faith under the general intentional conduct standard, assuming that standard is correct [Doc. 29 p. 12]. The final objection questions whether the

---

[1] Defendant challenges whether the general "intentional conduct" definition of bad faith is the correct standard; the Court addresses this argument *infra* Part IV.F.

[2] It appears undecided whether this burden of proof is preponderance of the evidence or clear and convincing evidence. *See Keller*, 391 F. Supp. 3d at 778 (noting the split in cases). The Court need not address this question today as the Court finds defendant has failed to establish bad faith, even applying a preponderance of the evidence standard.

intentional conduct standard is indeed the correct standard for determining bad faith. The Court will address the objections in the order that defendant presents them.

### A. The magistrate judge correctly found plaintiffs did not demonstrate bad faith by failing to extensively litigate against Phillip.

Defendant first argues the magistrate judge incorrectly failed to hold that plaintiffs' failure to extensively litigate against Phillip is evidence of plaintiffs' bad faith [Doc. 29 pp. 12–13]. As discussed below, defendant highlights several of plaintiffs' actions. The Court finds that none of defendant's contentions satisfy defendant's high burden to demonstrate intentional conduct of plaintiffs in bad faith.

First, defendant notes that in the first iteration of this case in 2013, plaintiffs immediately joined Phillip when defendant removed. The Court finds that plaintiffs indeed added Phillip in the first case only after defendant removed. But plaintiffs had no reason to add Phillip sooner because it was defendant's answer—which was filed only after defendant removed—that provided plaintiffs a basis for adding Phillip as a defendant under Tennessee Code Annotated § 20-1-119 in the first place. Namely, defendant's answer implicated Phillip as the cause of the car accident [Doc. 11-2 p. 5], and therefore, plaintiffs added Phillip to prevent defendant from asserting an empty-chair defense [Doc. 11 p. 5].

Second, defendant notes that plaintiffs filed the instant action after they nonsuited the 2013 action. Yet in the new lawsuit, plaintiffs named Phillip at the outset, and defendant argues they did so because they knew, based on the first case, that defendant would remove if they did not add Phillip as a defendant initially. It is true that plaintiffs

5

named Phillip as a defendant at the outset of this case. But the Court finds plaintiffs' decision to name Phillip at the outset of this action does not suggest that plaintiffs did so solely to prevent removal. It is just as likely, as plaintiffs assert, that plaintiffs added Phillip at the outset because they believed they needed Phillip to prevent defendant's empty-chair defense. Indeed, defendant maintained that Phillip caused the car accident throughout the entire litigation in the first case, and such suggested defendant would assert Phillip's fault at trial. Therefore, plaintiffs had cause to believe adding Phillip was necessary to prevent defendant's empty-chair defense.

Third, defendant highlights that plaintiffs actively opposed defendant's motion for summary judgment against Phillip. Defendant had filed a motion for summary judgment arguing that Phillip was negligent as a matter of law, yet plaintiffs disputed facts and affirmatively asserted arguments defending Phillip's actions as not negligent [Doc. 14-3 ¶¶ 34–36; Doc. 14-4 pp. 32–33]. The Court finds that plaintiffs had the right under Tennessee Code Annotated § 20-1-119 to add Phillip solely to combat defendant's empty-chair defense. Consequently, plaintiffs had no obligation to actively litigate against Phillip or even desire that he inevitably be found liable at trial. *See Mann v. Alpha Tau Omega Fraternity*, 380 S.W.3d 42, 51 (Tenn. 2012) ("If a co-defendant . . . alleges fault against the [nonparty], the plaintiff is left with the unpalatable prospect of proceeding to a trial at which the codefendant may attribute fault to an empty chair. . . . Our holding today avoids this inefficiency by allowing the plaintiff to bring the [nonparty] into the suit . . . ."); *see also Townes v. Sunbeam Oyster Co.*, 50 S.W.3d 446,

452–53 (Tenn. Ct. App. 2001) (discussing the breadth of Tennessee Code Annotated § 20-1-119 and a plaintiff's prerogative to choose its defendants).

Finally, defendant notes that an empty-chair defense—as plaintiffs recognized they attempted to avoid by adding Phillip—ripens only at trial [Doc. 29 pp. 12–13]. Defendant further explains that plaintiffs dismissed their claim against Phillip before trial, as demonstrated by plaintiffs' pretrial order, verdict form, and comments on defendant's jury instructions [*Id.*]. Therefore, defendant argues, plaintiffs undermined their argument that they added Phillip to avoid an empty-chair defense because they dismissed him before trial (when the defense would ripen). Thus, defendant argues plaintiffs' true reason for adding Phillip was to prevent removal rather than to rebut an empty-chair defense.

This argument is unavailing. Plaintiffs noted throughout their briefing that they included Phillip not only to avoid an empty-chair defense but also for general trial strategy, that is, to focus on how the vehicle behaved during the crash rather than how the crash occurred and whether the parties involved in the crash were responsible [*See generally* Doc. 30]. What is more, even if plaintiffs had provided no motive for dismissing Phillip before trial, the Court finds that plaintiffs reasonably could have decided to change course just before trial. Specifically, plaintiffs could have reasonably determined a better strategy was to abandon their claims against Phillip, focus on the vehicle's alleged defects, and risk an empty-chair defense.

7

Defendant objects to this reasoning in its second objection, arguing that plaintiffs did not provide briefing on this motive for dismissing Phillip and that it was improper for the magistrate judge to speculate as to plaintiffs' motives [Doc. 29 pp. 14–15]. The Court finds that the magistrate judge did not err on this front either. Defendant—not plaintiffs—bears the burden to show that plaintiffs acted in bad faith under § 1446(c)(1). *Williams*, 2018 WL 3084710, at *2–4. Thus, it is necessary for a court to consider reasonable, good-faith explanations for plaintiffs' decision-making when determining whether a defendant has met that burden. *Id.* at *5–6 (noting that requiring plaintiffs to explain their motives would improperly shift the burden of proof).

Therefore, the Court finds defendant's first objection is without merit.

### B. The magistrate judge properly considered alternative strategic rationales for plaintiffs' decision-making.

As noted above, defendant's second objection is that the magistrate judge improperly considered non-briefed, good-faith motives for plaintiffs' actions [Doc. 29 pp. 14–15]. Defendant's objections fail for two reasons. First, plaintiffs in fact asserted alternative motives that guided their strategic decision to focus on the vehicle's alleged defects rather than Phillip's driving [*See generally* Doc. 30]. Second, as discussed *supra* Part IV.A, the Court must consider alternative explanations—even those not briefed—because defendant rather than plaintiffs carry the burden of establishing bad faith.

Therefore, the Court finds defendant's second objection is without merit.

### C. The magistrate judge correctly found that plaintiffs' actions were not a guise for plaintiffs' bad faith and that defendant's cited legislative history regarding the bad-faith exception was not dispositive.

Defendant's third objection is that the magistrate judge failed to find that "couching Plaintiffs' conduct as a 'strategy' decision does not insulate it from a finding of bad faith" [Doc. 29 p. 15]. While unclear, it appears defendant makes two separate arguments in this objection.

First, it seems defendant generally argues that the magistrate judge failed to find that plaintiffs engaged in bad faith conduct by employing an intentional strategy to prevent removal. To the extent defendant makes this argument, it is too general, and even so, the Court rejects it for the other reasons the Court has found defendant failed to meet its burden to show plaintiffs engaged in bad faith.

Second, defendant argues the magistrate judge should have given dispositive weight to the legislative history it cited in determining the meaning and breadth of bad faith under § 1446(c)(1) [*Id.* at 15–16]. Defendant cites a House of Representatives report, which provides:

> In 1988, Congress amended [§ 1446] to prohibit the removal of diversity cases more than one year after their commencement. This change was intended to encourage prompt determination of issues of removal in diversity proceedings, and it sought to avoid the disruption of state court proceedings that might occur when changes in the case made it subject to removal. *The change, however, led some plaintiffs to adopt removal-defeating strategies designed to keep the case in state court until after the 1-year deadline passed.* . . . [S]ome courts have viewed the 1-year time limit as "jurisdictional" and therefore an absolute limit on the district court's jurisdiction. Other courts have viewed the period as "procedural" and therefore subject to equitable tolling . . . . In light of [this ambiguity,] inclusion of statutory language to resolve the conflict is appropriate.

9

> Proposed paragraph 1446(c)(1) grants district court judges discretion to allow removal after the 1-year limit if they find that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action. The inclusion in the new standard of *the phrase "in order to prevent a defendant from removing the action" makes clear that the exception to the bar of removal after one year is limited in scope.*

H.R. Rep. No. 112-10, at 15 (2011) (emphasis added). Defendant explains Congress was concerned about "removal-defeating strategies" when it enacted the bad-faith exception and thus intended to "limit[] the scope" of the one-year exception. *Id.*

The Court finds this legislative history does not support defendant's position. The language merely expresses Congress's motive for enacting the bad-faith exception, that is, to prevent improper "removal-defeating strategies." It is true the report indicates Congress intended to "limit[] the scope of the one-year exception. *Id.* The report does not, however, provide insight as to the precise degree to which Congress intended to reign in the one-year exception. For example, the report does not define bad faith or describe the intended breadth of the bad-faith exception.

In fact, because Congress was only concerned about "removal-defeating strategies," it very well may have intended the bad-faith exception to apply narrowly, that is, only when it is vastly clear that bad faith is at issue. Indeed, the Sixth Circuit district courts have interpreted bad faith narrowly. *Compare Keller*, 391 F. Supp. 3d at 778–79 (finding bad faith when a plaintiff explicitly admitted to the nonparty defendant that the plaintiffs named the nonparty defendant solely to prevent removal), *and Hiser v. Seay*, No. 5:14-CV-170, 2014 WL 6885433, at *4 (W.D. Ky. Dec. 5, 2014) (finding bad faith when the plaintiff admitted in its reply that it intentionally delayed settlement until after

10

the period for removal expired), *with Jones*, 2021 WL 674014, at *2 (finding no bad faith when plaintiffs substantially failed to litigate its case against the nondiverse defendant), *and Williams*, 2018 WL 3084710, at *4 (contrasting *Hiser* with a case where the alleged actions taken in bad faith were mere "litigation strategy decisions," including failing to take extensive discovery (citation omitted)).

Therefore, the Court finds defendant's third objection is without merit.

### D. The magistrate judge correctly analyzed relevant caselaw to conclude that the plaintiffs did not act in bad faith.

Defendant next argues the magistrate judge improperly analyzed *Hiser* and *Comer* in distinguishing those cases from this case [Doc. 29 pp. 16–17, 19]. In *Hiser*, the plaintiffs explicitly admitted that they preferred to keep their case in state court and accordingly delayed accepting a settlement offer until after the one-year removal period expired. 2014 WL 6885433, at *4. Thus, the court concluded that the plaintiffs had engaged in bad faith because they had taken intentional action—admitted delay tactics—"employed specifically to defeat diversity jurisdiction." *Id.* (citation omitted).

Similarly, in *Comer*, the defendants identified an email from plaintiffs explicitly admitting that they delayed a settlement agreement with a nondiverse defendant so that complete diversity would not exist before the one-year removal period expired. *Comer v. Schmitt*, No. 2:15-CV-2599, 2015 WL 5954589, at *1, *5 (S.D. Ohio Oct. 14, 2015). The court concluded that plaintiffs had engaged in "intentional inaction" in bad faith. *Id.* at *5.

11

The Court also takes note of *Keller*, which defendant relies on in its briefing [*See* Doc. 29 pp. 9–10]. In *Keller*, the court found the plaintiffs actions were in bad faith. 391 F. Supp. 3d at 780. The court found several indicia of bad faith, including that plaintiffs substantially failed to take discovery. *Id.* at 779–80. But most notably, the court, as in *Heller* and *Comer*, focused on a plaintiff's affidavit wherein the plaintiff explicitly admitted that plaintiffs named the nondiverse defendant as a party "to keep the suit in [state] rather than Federal Court." *Id.* at 779 (citation omitted). Importantly, the court suggested the plaintiffs could have effectively rebutted the allegation of bad faith simply by filing an affidavit by that same plaintiff denying the previous affidavit. *Id.* at 780 ("If [the plaintiff] did not make the alleged admission, Plaintiffs had a simple solution—file an affidavit from [that same plaintiff] denying it. . . . The *undisputed* admission is direct evidence that Plaintiffs joined the [the nondiverse defendant] solely to defeat diversity and prevent removal." (emphasis added)).

Defendant argues the magistrate judge assumed that a direct admission by the plaintiff—as in *Hiser*, *Comer*, and *Keller*—or other similar direct showing of culpable motive is necessary to establish bad faith [Doc. 29 p. 16]. Defendant argues such an admission or direct evidence of a culpable motive is not necessary because Congress intended the bad-faith exception to be broad [*Id.* at 16–17]. *See supra* Part IV.C.

The Court need not decide whether the bad-faith exception requires an outright admission as in *Hiser*, *Comer*, and *Keller* or other direct showing of culpable intent. As noted, the Sixth Circuit has not clearly defined the meaning of bad faith, and legislative

12

history provides no guidance. Therefore, the best guide for the Court is its sister courts' opinions, and the Sixth Circuit district courts have construed the bad-faith exception narrowly. For the reasons stated in the R&R and above, the Court finds this case is more analogous to those cases finding the plaintiffs did not engage in bad faith. Defendant has not identified any intentional conduct by plaintiffs demonstrating their intent to retain Phillip solely to defeat diversity; instead, plaintiffs' conduct is as consistent with other legitimate motives, including general trial strategy and/or intent to avoid an empty-chair defense [*See* Doc. 28 pp. 12–14]. *See, e.g*, *Larue*, 2017 WL 2312480, at *2–7.

Therefore, the Court finds defendant's fourth objection is without merit.

### E. The magistrate judge correctly held that plaintiffs' pretrial behavior regarding its claim against Phillip was insufficient to establish bad faith.

Next, Defendant argues the magistrate judge should have determined the following establishes plaintiffs' bad faith: (1) plaintiffs' failure to engage in extensive discovery; (2) the decision not to seek a default or default judgment against Phillip when he did not appear or answer the complaint; (3) the decision to exclude Phillip from its verdict form, pre-trial order, and comments on defendant's jury instructions; and (4) the decision to proactively oppose defendant's summary judgment motion against Phillip.

The Court has already held the third and fourth arguments were insufficient to establish bad faith in Part IV.A and will not readdress those arguments here. As to the fact that plaintiffs did not extensively engage in discovery of or seek default or a default judgment against Phillip, the Court finds these actions were insufficient to establish bad

13

faith for similar reasons: (1) plaintiffs had the right to focus on the behavior of the vehicle rather than on Phillip's behavior; (2) plaintiffs had the right to retain Phillip solely to avoid an empty-chair defense, even without attaining additional discovery pertaining to his behavior; and (3) seeking a default or default judgment would have been inconsistent with plaintiffs' initial strategic determination to retain Phillip until trial to avoid an empty-chair defense.

Therefore, the Court finds defendant's fifth objection is without merit.

### F. The magistrate judge correctly applied the "intentional-conduct" standard instead of the *Aguayo*[3] standard for bad faith.

Finally, defendant argues plaintiffs' conduct constitutes bad faith under the *Aguayo* standard and argues that the magistrate judge erred by failing to apply *Aguayo* [Doc. 29 pp. 20–22]. Defendant argues *Aguayo* more fully comports with Congressional intent and sets forth more clearly administrable standards than the general intentional conduct standard.

In *Aguayo*, the United States District Court for the District of New Mexico adopted a two-step analysis that hinges on whether the plaintiff has "actively litigated" its case against the defendant:

> First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. *Failure to actively litigate against the removal spoiler will be deemed bad faith*; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with

---
[3] *Aguayo v. AMCO Ins. Co*, 59 F. Supp. 3d 1225 (D.N.M. 2014).

14

> evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.

*Aguayo*, 59 F. Supp. 3d at 1262–63 (emphasis added).

Neither the Sixth Circuit nor any district court within the Sixth Circuit has adopted the *Aguayo* standard. The Sixth Circuit district courts have instead: (1) applied the general intentional conduct standard outright and not discussed *Aguayo*; (2) rejected *Aguayo*; (3) disfavorably cited *Aguayo*, or (4) refused to decide which standard is more desirable and applied both. *Compare Jones*, 2021 WL 674014, at *1 (applying the intentional conduct standard without discussing *Aguayo*), *with Good Nutrition, LLC*, 2018 WL 7858719, at *5 (noting *Dutchmaid Logistics* rejected *Aguayo* because its test is contrary to judicial economy because it deters dismissing unnecessary defendants and encourages unnecessary discovery), *with Larue*, 2017 WL 2312480, at *6 (citing *Aguayo* disfavorably but concluding plaintiffs did not engage in bad faith even under *Aguayo*), *and Dutchmaid Logistics, Inc.*, 2017 WL 1324610, at *3–4 (refusing to adopt *Aguayo* but holding even if the court applied *Aguayo*, the plaintiffs did not act in bad faith), *with Williams*, 2018 WL 3084710, at *3–5 (noting both standards but refusing to adopt either).

Defendant argues the *Keller* court cited *Aguayo* favorably [Doc. 29 p. 10]. Defendant's contention is misguided. It is true the *Keller* court cited *Aguayo* twice. *See* 391 F. Supp 3d at 778. But in both circumstances, the *Keller* court cited *Aguayo* only for the general proposition that bad faith refers to the tactic of maintaining a claim against a

15

nondiverse defendant solely to defeat removal. *Id.* The *Keller* court did not formally adopt or even discuss the *Aguayo* standard.

As stated in Part IV.D, the Court need not define precisely the type of conduct that constitutes bad faith today. It is sufficient in light of *stare decisis* to follow the overwhelming consensus of the Sixth Circuit district courts and apply the intentional conduct standard rather than the *Aguayo* standard. Applying that standard, for the reasons already stated, the Court finds no intentional conduct, that is, intentional action or inaction, of plaintiffs that indicates bad faith.[4]

Therefore, the Court finds defendant's fifth objection is without merit.

## V. Conclusion

The Court has independently reviewed the R&R and agrees with Magistrate Judge Steger's recommendations, which the Court adopts and incorporates into this ruling. The Court finds that defendant's objections to the R&R [Doc. 29] are without merit. Accordingly, the Court **ACCEPTS IN WHOLE** the R&R [Doc. 28]. Thus, the Court finds that remand is proper and therefore plaintiffs' motion to remand [Doc. 11] is hereby **GRANTED**. However, plaintiffs' request for attorneys' fees and costs is **DENIED**. This case is **REMANDED** to the Circuit Court for Hamilton County, Tennessee for further proceedings. A separate order will follow.

ENTER:

                                                     s/ Thomas A. Varlan
                                                     UNITED STATES DISTRICT JUDGE

---

[4] The Court declines to decide whether plaintiffs' conduct would constitute bad faith under the *Aguayo* standard in light of the consensus of the Sixth Circuit district courts.

16